STATE of Wisconsin, Plaintiff-Respondent,

v.

James TOY, Defendant-Appellant.†

Court of Appeals

*No. 83-1973-CR. Submitted on briefs March 29, 1985.—Decided June 5, 1985.*
(Also reported in 371 N.W.2d 386.)

For the defendant-appellant, the cause was submitted on the briefs of *Mary E. Waitrovich,* assistant state public defender.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *William L. Gansner,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.  The major issue on appeal concerns the authority of a Wisconsin court to impose a sentence consecutive to a sentence earlier imposed in another state. The defendant, James Toy, maintains that Wisconsin courts are statutorily prohibited from imposing consecutive sentences in these situations. We reject his argument. We also reject his arguments relating to

sufficiency of evidence and the failure to give a certain instruction to the jury.

Toy was convicted of eight armed robberies arising out of one incident. At the time sentence was imposed, Toy was serving a two-and-a-half year sentence in the state of New Jersey. The trial court made its sentences for the armed robberies consecutive to the New Jersey sentence. Other facts will be provided when necessary.

Toy cites statutory authority for the proposition that he can only be sentenced concurrently with an out-of-state sentence. The statutes he relies on are secs. 973.15 (2) and (3), Stats. (1979–80), relating to a trial court's authority in sentencing. These provisions are as follows:

> (2) The court may impose as many sentences as there are convictions and may provide that any such sentence be concurrent or that it shall commence at the expiration of any other sentence. If the convicted offender is then serving a sentence or is subject to parole revocation proceedings, the present sentence may provide that it shall commence at the expiration of the previous sentence or any sentence resulting from a revocation of parole.
> (3) Courts may impose sentences to be served in whole or in part concurrently with a sentence being served or to be served in a federal institution or an institution of another state.

*Id.*

Toy notes that sec. 973.15(3), Stats., is the only section that makes specific reference to out-of-state sentences. Toy asserts that, on its face, the language permits only a sentence "in whole or in part" concurrent to a federal or other state sentence. Toy concludes that since the primary source of construction is the language of the statute itself, the trial court erred.

We decline to accept Toy's argument. Legislative intent is primarily deduced from the language which the legislature has chosen to use. *State v. Mauthe*, 123 Wis.

2d 288, 299, 366 N.W.2d 871, 876 (1985). Although the language of sec. 973.15(3), Stats., does discuss concurrent sentences, it is silent about whether a sentence consecutive to an out-of-state sentence is prohibited. As to the section's focus on concurrent sentences, it specifically says that the court *may* impose a concurrent sentence. The permissive nature of this language permits but does not require a concurrent sentence.

The language of sec. 973.15(3), Stats., is made all the more clear when read with its immediate precursor, sec. 973.15(2). We are not to read sections of a statute in a vacuum but must read them together in order to best determine the plain and clear meaning of the statute. *Arneson v. Arneson,* 120 Wis. 2d 236, 243, 355 N.W.2d 16, 19 (Ct. App. 1984). Section 973.15(2) expressly provides for consecutive sentencing in all situations and imposes no restrictions.

Reading the two subsections together, we hold that it is equally proper to impose sentences, in situations where out-of-state convictions are involved, either consecutively, under subsection (2), or concurrently, under subsection (3).[1]

Toy urges us not to find a plain meaning contrary to his position and suggests that, at the least, the statute is ambiguous. He argues for ambiguity because even

---

[1] The history of secs. 973.15(2) and (3), Stats., since 1977 indicates that the legislature continues to consider it proper that the trial court have discretion to impose consecutive or concurrent sentences. A 1977 revision, which repealed and recreated sec. 973.15, preserved the language of secs. 973.15(2) and (3). Ch. 353, sec. 8, Laws of 1977. Similarly, the note to the revision of subsection (2) in 1981 states that the section was rephrased in order to clarify the authority of the court in situations where a prior sentence was not currently being "served" because of probation, parole revocations and escapes. Ch. 50, Laws of 1981. That revision preserved subsection (3) and changed subsection (2) to its current form.

if we say that the legislature never expressly prohibited consecutive sentences to out-of-state convictions, the legislature never specifically permitted it either. Toy alleges that the legislature has been aware since 1942 that there is no inherent authority to defer execution of sentences. Toy then cites *State v. Gordon,* 111 Wis. 2d 133, 145, 330 N.W.2d 564, 569 (1983), for the proposition that the legislature is presumed to know the law. It would have been a simple matter, claims Toy, to clearly say what the state claims the statute says. He points out that ambiguity in statutes must be resolved in favor of the accused, consistent with the rule of lenity. *See State v. Morris,* 108 Wis. 2d 282, 289, 322 N.W.2d 264, 267 (1982).

We are not persuaded. Our reading of the statutes is that there is no ambiguity. As we have already stated, the legislature has clearly and expressly dealt with consecutive sentences in subsection (2) and has *allowed,* without limitation, Wisconsin's courts to sentence consecutively. Subsection (3) merely permits concurrent sentencing as well. The two statutes do not conflict but together delineate the scope of the trial court's discretion.[2]

---

[2] Even if there were ambiguity, and there is not, we would reject Toy's claim that the legislative intent solves the ambiguity in favor of his construction of the statute. In point of fact, the legislative intent favors our construction.

Without detailing Toy's argument, it is sufficient to note that sec. 973.15(3), Stats. (then numbered sec. 959.07(1), Stats.), was created by ch. 248, Laws of 1967. As the attorney general explained in its brief, a letter in the bill drafting file from Sanger Powers, then director of the Division of Corrections, to then Senator Robert W. Warren, co-sponsor of the bill, advises that the division requested the legislation because, at the time, federal sentences could run concurrently with those imposed in Wisconsin, but the reverse was not true. At that time, Wisconsin courts only had authority to sentence consecutively; this authority had existed since 1949. The legislative history supports the plain lan-

Toy also objects to the sufficiency of the evidence. The armed robberies took place at a McDonald's restaurant. Three men were involved, including Toy. Toy claims that the plan was for Toy and one Sullivan to coerce restaurant employees to open a safe and the cash register. Harry Coleman was to serve as a lookout. According to Toy's theory, he and Sullivan did, by threat of armed force, get two employees to do their bidding. Toy claims, however, that unbeknownst to him, Coleman unilaterally left his limited role and robbed six customers.

Toy observes that aiding and abetting requires proof beyond a reasonable doubt that assistance was knowingly rendered. *State v. Asfoor,* 75 Wis. 2d 411, 427, 249 N.W.2d 529, 536 (1977). He asserts that Coleman's acts occurred outside of Toy's presence because Toy was preoccupied behind the counter at all times during the robbery. This being so, Coleman's acts were accomplished without evidence of an objective act of assistance by Toy. Toy claims that any other view of the evidence would necessarily have to rely on inconsistent testimony which Toy derides as a "pick and choose" method.

We have read the complete record and agree that the witnesses were largely inconsistent respecting who was who, who did what and where each robber was. It was not contradicted that, of the three men, Coleman was the one who was in the customer area at all times. It is also uncontroverted that another man was behind the counter the whole time. The witnesses did disagree, however, about who this man was. They also disagreed

guage that sec. 973.15(3) was designed to permit concurrent sentences if the sentencing court so desired.

We observe that statutes should be interpreted in light of their purpose. *State v. Mauthe,* 123 Wis. 2d 288, 299, 366 N.W.2d 871, 876 (1985). In authorizing the courts to impose consecutive terms, including consecutive life sentences, the legislature seeks to extend maximum protection to its state's citizens.

about who the third man was and where he was positioned. Depending on which witness the jury believed, it could be said that the third man was in a position to see everything that happened in the customer area and even helped Coleman rob three patrons. On the other hand, it could be said that this third man was behind the counter with the other man. Also disputed was whether the third man was Sullivan or Toy.

It is the jury's task, however, not this court's, to sift and winnow the credibility of the witnesses. We review sufficiency of evidence claims most favorably to the jury's findings. *Bautista v. State,* 53 Wis. 2d 218, 223, 191 N.W.2d 725, 728 (1971). It is certainly allowable for the jury to believe some of the testimony of one witness and some of the testimony of another witness even though their testimony, read as a whole, may be inconsistent. *See, e.g., State v. Cartagena,* 99 Wis. 2d 657, 665, 299 N.W.2d 872, 877 (1981). In light of this standard, a fair view of the evidence is that only Sullivan was behind the counter at all times. Not until the safe and cash registers were open did another man come behind the counter. The jury could infer, despite credible evidence to the contrary, that this other man was Toy and that Toy was not behind the counter during the entire robbery. The jury could equally infer that Toy was on or near the customer side of the counter for a considerable portion of the time. This inference is credible in itself and, if believed by the jury, excludes other reasonable hypotheses. We conclude that there was sufficient evidence from which the jury could find that Toy was aware of Coleman's actions and supported and acquiesced in them.

Finally, Toy submits that criminal liability as an aider and abetter can be established either by showing that the defendant was *aware* of and assisted or acquiesced in the acts of the principal in the charged crime or that

he was *unaware* of the crime but the crime was a natural and probable consequence of whatever crime the defendant was involved in. He cites *Asfoor*, 75 Wis. 2d at 430–31, 249 N.W.2d at 537–38, and *Roehl v. State*, 77 Wis. 2d 398, 406–08, 253 N.W.2d 210, 214–15 (1977), for this proposition.

Toy then argues that both alternatives must be given to the jury. He contends that since the jury was informed about the aware-assist or acquiescence necessity but not the unaware-natural and probable consequences part, error was committed.

This was waived by the defendant's failure to object. It is not plain error such that we would address it because the integrity of the fact-finding process has in no way been disturbed. *Cf. State v. Baldwin*, 101 Wis. 2d 441, 446, 304 N.W.2d 742, 746 (1981). This is because there was sufficient evidence from which the jury could find that Toy was aware of Coleman's acts and acquiesced in them. There was no need for an "unaware-natural and probable consequences" alternative. Had that been given, it would only have made the prosecutor's task easier.

*By the Court.*—Judgment affirmed.